# Exhibit A

Case 2:21-cv-00354-DJH   Document 1-2   Filed 03/01/21   Page 2 of 16

Clerk of the Superior Court
*** Electronically Filed ***
G. Atabaeva-Coy, Deputy
2/17/2021 10:44:53 AM
Filing ID 12551936

**LANG & KLAIN, P.C.**
6730 N. SCOTTSDALE RD., SUITE 101
SCOTTSDALE, ARIZONA 85253
TELEPHONE (480) 534-4900
*Please e-serve filings on:*
*Filing@lang-klain.com*

JAMES N. HANSON, #029091
jhanson@lang-klain.com *(not for e-service)*
JASON A. CLARK, #030765
jclark@lang-klain.com *(not for e-service)*
*Attorneys for Plaintiff*

## SUPERIOR COURT OF ARIZONA

## MARICOPA COUNTY

| | |
|---|---|
| APACHE MUFFLER & RADIATOR, INC., an Arizona corporation,<br><br>Plaintiff,<br><br>v.<br><br>COUNTRY MUTUAL INSURANCE COMPANY, an Illinois company; KYLE VANLANDINGHAM, an Arizona resident;<br><br>Defendants. | **Case No.:** CV2021-002561<br><br>**COMPLAINT**<br><br>**(Declaratory Judgment; Breach of Contract; Breach of Good Faith and Fair Dealing)**<br><br>*Tier 3 Case*<br><br>*(Commercial Court Assignment Requested)* |

For its Complaint against Defendants Country Mutual Insurance Company ("Country") and Kyle Vanlandingham ("Mr. Vanlandingham"), Plaintiff Apache Muffler & Radiator, Inc. ("Apache") alleges as follows:

### JURISIDCTION AND VENUE

1. Apache is an Arizona corporation with its principal place of business located in Maricopa County, Arizona.

2. Country is an Illinois company that is duly authorized to conduct insurance business in Maricopa County, Arizona.

3. Upon information and belief, at all material times hereto, Mr. Vanlandingham was a resident of Maricopa County, Arizona, and was licensed and authorized to provide insurance producer services in Arizona.

4. Upon information and belief, at all times material hereto, Mr. Vanlandingham was an agent of Country, employed exclusively to market and sell Country's insurance products.

5. Country and Mr. Vanlandingham have caused events to occur in Maricopa County, Arizona, out of which the causes of action alleged herein arise.

6. Jurisdiction and venue are proper in this Court.

7. Pursuant to Arizona Rules of Civil Procedure 8(b)(2) and 26.2(c)(3), this action qualifies for Tier 3.

## GENERAL ALLEGATIONS

**A.    Apache Purchases "Platinum" Coverage from Country.**

8. Apache operates an automobile repair shop.

9. For several years before 2019, Apache insured its assets, including the building out of which it operated at 720 W. Main Street in Mesa, Arizona (the "Property"), through The Hornish Group.

10. Apache was satisfied with the insurance products that it purchased from The Hornish Group.

11. In early 2019, Mr. Vanlandingham talked with Apache about switching its insurance business from The Hornish Group to Country.

12. At that time, Mr. Vanlandingham was a financial representative and commercial insurance specialist for Country.

13. In order to allow Mr. Vanlandingham to provide a meaningful insurance quote from Country, Apache provided Mr. Vanlandingham its current insurance policies and arranged for him, and a Country underwriter, Eric Elliott, to visit and observe the Property.

14. During Mr. Vanlandingham's site visit, he spoke with Apache's president, Jeff Lihosit, about the unique considerations that the Property presented for insurance coverage;

namely—the Property's age (it was built in the 1950s) and its close proximity to the Valley Metro Light Rail.

15. Specifically, when Apache started operating its business at the Property in the 1960s, the Light Rail did not exist at that location. However, the construction of the Light Rail near the Property caused the City of Mesa to increase the building code standards for new construction in the area to, in part, maintain a level of aesthetic appeal surrounding the Light Rail.

16. With this in mind, Mr. Lihosit told Mr. Vanlandingham that Apache would consider switching insurance providers if made financial sense (i.e. was relatively close in price to its current policy premiums) and increased Apache's coverage so that the Property would not be "under-covered" in the event of a substantial incident. In particular, Mr. Lihosit was concerned with having coverage to build all aspects of the Property up to the current building codes adopted by the City of Mesa.

17. In response, Mr. Vanlandingham told Mr. Lihosit that Country would provide a "Platinum" policy that covered all costs to rebuild the Property—including but not limited to the physical building and surrounding structures, like the parking lot, fence, and gate—to the applicable building codes in effect at the time of any loss. In other words, Mr. Vanlandingham agreed to procure insurance for Apache sufficient to fully insure all aspects of the Property.

18. Based on Mr. Vanlandingham's representations, and the price quote that he provided on behalf of Country, on or about June 20, 2019, Apache purchased Policy No. AB 9280893 00 from Country, which included commercial general liability, automobile, and property coverage from Country (the "Policy").

**B.     The "Platinum" Policy**

19. As is pertinent here, the Policy contained a Business and Personal Property Coverage Form, which provided that Country would cover, among other things, physical loss or damage caused to the Property by a fire, including the Property's additions, fixtures, and permanently installed machines and equipment.

20. The Business and Personal Property Coverage Form also provided that Country would "pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding, or replacement" of damages portions of the Property.

21. In addition, consistent with Mr. Vanlandingham's representations and Apache's stated concern to be fully covered in the event of a substantial loss, Apache purchased an "Auto Service Property Platinum Endorsement," which supplemented and increased the coverage provided by the Policy in connection with, among others, the Building and Personal Property Coverage Form.

22. In particular, it provides that Country "will pay for loss or damage caused by or resulting from a Covered Cause of Loss to the following property that is . . . not part of a building," such as retaining walls, bridges, sidewalks, patios, driveways, parking lots and other paved surfaces.

23. The Platinum Endorsement also incorporated an "Ordinance or Law Coverage" Endorsement into the Policy.

24. The Ordinance or Law Coverage Endorsement applied if the Property sustained direct physical damage that is covered under the Policy and as a result of such damage, Apache was required to comply with an ordinance or law.

25. More specifically, and as pertinent here, with respect to the Property that sustained covered direct physical damage, Country agreed to pay the increased cost to repair or reconstruct damaged portions of the Property, or reconstruct or remodel undamaged portions of that building whether or not demolition is required, when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

26. Importantly, as pertinent here, the endorsement provided "coverage for the increased cost of construction . . . to repair or reconstruct[] . . . (1) the cost of excavations, grading, backfilling, and filling; (2) foundation of the building; (3) pilings; and (4) underground pipes, flues and drains," which were specifically deleted from "Property Not Covered" under the Policy for purposes of this endorsement.

27. The effective period for the Policy was June 27, 2019, to June 27, 2020.

**C.  The Fire and Country's Initial Investigation of Apache's Loss.**

28. In the early morning of August 19, 2019, the Property was destroyed by an accidental fire.

29. That same day, Apache promptly submitted Claim No. 163-0042574 to Country in connection with losses it suffered as a result of the fire at the Property.

30. Following receipt of Apache's claim, Country assigned Brian Stading as its estimator and claims representative.

31. On August 21, 2019, Mr. Stading met with Mr. Lihosit and his then-fiancé, Mary Luzzi, at the Property to inspect the damage and take a statement from Mr. Lihosit.

32. During the August 21 meeting, Mr. Stading also reviewed the Policy with Mr. Lihosit and Ms. Luzzi.

33. The following day, Mr. Stading confirmed in an email to Mr. Lihosit that Apache's Policy included coverage for ordinance and change of law.

**D.  Country's Initial Repair Estimate Does Not Include Increased Cost of Construction.**

34. Several months later, on or about November 6, 2019, Mr. Stading provided a letter that enclosed a repair estimate, dated 10/15/19, for the Property that estimated the actual cash value for the "extent of known covered damage" at the Property was $78,184.83, and a check to Apache for $77,184.83, which represented the actual cash value Country determined with the estimate minus a $1,000 deductible. The estimate placed the replacement cost value for the Property at $123,393.00.

35. Importantly, however, the repair estimate also provided in pertinent part: "This estimate of repairs reflects the extent of known covered damage to your property. You may have the repairs made by a contractor of your choice. However, **any repair charges that increase the repair cost above our estimate will be your responsibility unless agreed to in advance by us**." (Emphasis added).

36. This repair estimate, however, was incomplete and did not include any amounts needed to cover construction costs required to comply with the City of Mesa's current building codes.

37. Thereafter, Apache's general contractor—National First Response ("National")—notified Mr. Stading that Country's estimate was incomplete and provided him with a revised repair estimate for $173,526.30, that included costs for necessary code upgrades that Country's estimate omitted. National's estimate was premised, however, with the important caveat that the estimated price would change substantially if the City of Mesa did not allow the Property to be rebuilt to its configuration at the time of the fire.

**E. Country Dilatorily Reviewed Apache's Cost to Repair Estimate.**

38. Following receipt of National's estimate, Mr. Stading sent a letter to Apache on November 26, 2019, advising that its claim "remains open because [Country is] waiting for the City of Mesa to advise what is being enforced for code so we an finalize the repair estimate."

39. On or about December 20, 2019, Mr. Stading sent another letter to Apache that again stated Apache's "remains open because we are waiting for the information from the City of Mesa regarding code enforcement so that we can conclude the estimate."

40. On or about February 4, 2020, Mr. Stading sent a third letter to Apache that reiterated the claim continued to remain open because Country was "in the process of completing the estimate regarding code coverage and waiting for repairs to be completed."

41. Roughly five months after providing the original repair estimate, on or about March 4, 2020, Mr. Stading provided Apache with an updated repair estimate for the Property's damage. The updated estimate included certain amounts for code compliance and increased the actual cash value of the Property to $99,003.92.

42. Although the updated estimate from Country increased the actual cash value by $20,825.09, it was accompanied by an additional claim payment for only $11,744.69.

- 6 -

43. Nonetheless, Country's revised repair estimate was still incomplete and insufficient to address all the repairs and construction costs required to satisfy the City of Mesa's building codes at the time of the loss.

44. Indeed, on or about March 5, 2020, National informed Mr. Stading that the revised estimate still omitted critical items required by the City of Mesa, including but not limited to, an ADA compliant parking lot, upgraded electrical AMPs, debris removal related to the Property's foundation and previous footings, and a block fence enclosing the Property.

45. In response, Mr. Stading provided a letter to Apache on or about March 19, 2020, that provided the "policy language regarding the areas that are not covered." The letter referred only to the Building and Personal Property Coverage Form, and in particular, Section A(2)(d), (e), (g), and (q), which defined certain "Property Not Covered." It did not, however, refer to the Platinum or Ordinance or Law Endorsements or otherwise explain why those provisions did not apply.

46. In late March 2020, Apache spoke with Mr. Vanlandingham and Mr. Elliott. During that conversation, Mr. Vanlandingham and Mr. Elliott expressed their belief that the "Platinum" coverage was sold to Apache to cover this very incident. Thus, everyone involved in the sale of the Policy seemed to believe that the coverage Apache purchased from Country would pay for the construction costs that Apache was seeking.

**F.    Country Ignores and Refuses Apache's Efforts to Reasonably Resolve the Claim.**

47. Thereafter, in or about April 2020, Apache also spoke with Mr. Stading and his supervisors at Country about the Policy and the disagreement about the scope of coverage on the construction costs necessitated by the City of Mesa's current building codes.

48. During that phone meeting, Country contended that the Policy only covered the building itself, and anything outside of the building, such as fences and parking lots, was excluded. When Apache and National asked for clarification and explanation on this position, or why certain policy provisions in the Platinum and Ordinance and Law endorsements did not apply, Country said that it was not "going to debate coverage" with them.

49. That April meeting concluded with Country asking National and Apache to submit estimates relating to the foundation work needed at the Property so that it could assess whether those amounts were covered by the Policy.

50. In response to Country's request, on or about May 14, 2020, National provided Country with a supplemental estimate in the amount of $110,006.08 for concrete and other work required to rebuild the Property. The costs contained in this supplemental estimate were in addition to those contained in National's preliminary $173,526.30 estimate.

51. Country did not respond to National's supplemental estimate.

52. Instead, over the ensuing months, Country provided Apache with a monthly form letter that merely stated that the claim remained open "because we are waiting for repairs to be completed."

53. However, Apache could not reasonably move forward with the total rebuild of the Property until it received some assurance from Country that those costs would be reimbursed under the Policy.

54. On June 23, 2020, Apache, through counsel, informed Country of its frustration with how Country had managed the claim to date, and asked Country to meet with it in-person to "discuss each side's position regarding coverage and to calculate together a cost of repair that actually meets Apache Muffler's real needs and reasonable expectations."

55. In light of Apache's suggestion, Apache and Country held a meeting at the Property on or about August 6, 2020.

56. During that meeting, Apache showed Country the current site layout, presented the status of work at the site, and estimated that a final cost of repair would be available once the City of Mesa issued the necessary building permits.

57. Based on that meeting, Apache worked diligently with the City to obtain the necessary permits and finalize a complete construction estimate to provide to Country.

58. However, following that meeting, Country continued to ignore Apache's efforts to reach a resolution of the claim.

59. For instance, on August 26, 2020, Apache submitted receipts for out-of-pocket expenses totaling $122,764.26 it incurred on various construction items at the Property to date, including costs for constructing a block wall required by the City of Mesa, engineering and permit fees, architectural costs, concrete demolition and installation, and electrical lines.

60. Country did not provide any payment or formal response to these submitted costs under the claim.

61. In addition, on August 28, 2020, Apache provided Country with the final, comprehensive estimate prepared by National to complete the rebuild of the Property to the applicable building codes adopted by the City of Mesa, which estimated the construction cost at $572,971.69.

62. Consistent with its recent approach, Country effectively ignored National's final estimate and did not engage in any meaningful discussion about the items in the estimate that were covered by the Policy.

63. As such, on September 16, 2020, Apache sent Country a demand for adequate assurances that Country would provide the insurance coverage that Apache reasonably expected it purchased from Country with the "Platinum" Policy—that is, state clearly in writing that Country will pay to have Apache's Property re-built according to the requirements of Mesa's current building codes.

64. On September 30, 2020, rather than providing the requested assurances, Country instead asked Apache to confirm that it had no contractual claim for additional monies under the Policy and to explain how the doctrine of reasonable expectations provided any basis for Apache to receive any further payments from Country; Country did not make any effort to analyze National's final estimate under the Policy.

65. In response, in December 2020, Apache invited Country to participate in a non-binding mediation to informally and efficiently reach a resolution that would permit Apache to rebuild its Property and operate its business as it did before the fire.

66. To date, Country has not responded to Apache's invitation.

## COUNT ONE

## DECLARATORY JUDGMENT - COUNTRY

67. Apache hereby realleges each and every preceding allegation contained in this Complaint as if set forth in their entirety herein.

68. Pursuant to A.R.S. § 12-1831 *et seq.*, this Court has the power to declare the rights, status, and other legal relations between the parties.

69. As alleged herein, an actual, justiciable dispute exists between Apache and Country with respect to the nature and extent of rights, obligations, and coverage that Apache and Country have under the Policy.

70. Apache is entitled to a declaration from this Court that Country must provide full coverage to Apache for the increased cost to construct the Property to the current City of Mesa building codes pursuant to the Policy.

71. This matter arises out of contract. Therefore, Apache is entitled to recover its reasonable attorneys' fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01.

WHEREFORE, Apache requests judgment against Country as follows:

A. For a declaration from this Court that Country must provide full coverage to Apache for the increased cost to construct the Property to the current City of Mesa building codes pursuant to the Policy.

B. Awarding Apache its costs and attorneys' fees pursuant to A.R.S. §§ 12-341 and 12-341.01.

C. Awarding Apache interest on all sums awarded to it, said interest calculated at the highest legal rate from the date of judgment until paid in full; and

D. Granting Apache such other relief as the Court may deem appropriate under the circumstances.

## COUNT TWO

## BREACH OF CONTRACT - COUNTRY

72. Apache hereby realleges each and every preceding allegation contained in this Complaint as if set forth in their entirety herein.

73. The Policy is a valid, enforceable contract.

74. Apache has fully performed each and every obligation required of it under the Policy.

75. As alleged herein, Country has breached its obligations under the Policy by, among other things, failing to promptly pay to Apache all benefits for the increased cost to construct the Property under the Policy.

76. By virtue of Country's breach of the Policy, Apache has been damaged in an amount to be proven at trial but no less than $50,000.00.

77. This matter arises out of contract. Therefore, Apache is entitled to recover its reasonable attorneys' fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01.

WHEREFORE, Apache requests judgment against Country as follows:

A. Awarding Apache compensatory damages in an amount to be proven at trial, but no less than $50,000.00.

B. Awarding Apache its costs and attorneys' fees pursuant to A.R.S. §§ 12-341 and 12-341.01.

C. Awarding Apache interest on all sums awarded to it, said interest calculated at the highest legal rate from the date of judgment until paid in full; and

D. Granting Apache such other relief as the Court may deem appropriate under the circumstances.

## COUNT THREE

## BAD FAITH - COUNTRY

78. Apache hereby realleges each and every preceding allegation contained in this Complaint as if set forth in their entirety herein.

- 11 -

79. A duty of good faith and fair dealing is implied in every insurance contract.

80. Country owed Apache a duty to act fairly and in good faith with respect to the Policy.

81. As detailed above, Country breached this duty of good faith towards Apache by, among other things, (a) intentionally denying and/or failing to pay portions of Apache's claim without a reasonable basis; and (b) knowing or recklessly disregarding its lack of a reasonable basis and/or failing to perform an investigation or evaluation adequate to determine whether its action was supported by a reasonable basis.

82. As a direct result of Country's breaches described herein, Apache has been damaged in an amount to be determined at trial, but no less than $50,000.00.

83. In addition, Country's actions were motivated by ill will and/or were undertaken knowing they created a risk of significant harm to Apache, thereby entitling Apache to punitive damages in an amount sufficient to punish Country for its actions and deter Country and other similarly situated from behaving in a like manner.

WHEREFORE, Apache requests judgment against Country as follows:

A. Awarding Apache compensatory, consequential, and incidental damages in an amount to be proven at trial, but no less than $50,000.00.

B. For punitive damages in such a sum as this Court may determine is necessary to punish the intentional misconduct and deter further wrongdoing;

C. Awarding Apache is costs and attorneys' fees pursuant to A.R.S. §§ 12-341 and 12-341.01.

D. Awarding Apache interest on all sums awarded to it, said interest calculated at the highest legal rate from the date of judgment until paid in full; and

E. Granting Apache such other relief as the Court may deem appropriate under the circumstances.

## COUNT FOUR

## BREACH OF GOOD FAITH AND FAIR DEALING – COUNTRY

84. Apache hereby realleges each and every preceding allegation contained in this Complaint as if set forth in their entirety herein.

85. A duty of good faith and fair dealing is implied in every contract.

86. Country owed Apache a duty to act fairly and in good faith with respect to the Policy.

87. As detailed above, Country breached this duty of good faith towards Apache by, among other things, (a) intentionally denying and/or failing to pay portions of Apache's claim without a reasonable basis; and (b) knowing or recklessly disregarding its lack of a reasonable basis and/or failing to perform an investigation or evaluation adequate to determine whether its action was supported by a reasonable basis.

88. As a direct result of Country's breaches described herein, Apache has been damaged in an amount to be determined at trial, but no less than $50,000.00.

WHEREFORE, Apache requests judgment against Country as follows:

A. Awarding Apache compensatory, consequential, and incidental damages in an amount to be proven at trial, but no less than $50,000.00.

B. Awarding Apache is costs and attorneys' fees pursuant to A.R.S. §§ 12-341 and 12-341.01.

C. Awarding Apache interest on all sums awarded to it, said interest calculated at the highest legal rate from the date of judgment until paid in full; and

D. Granting Apache such other relief as the Court may deem appropriate under the circumstances.

## COUNT FIVE

## NEGLIGENCE – MR. VANLANDINGHAM

89. Apache hereby realleges each and every preceding allegation contained in this Complaint as if set forth in their entirety herein.

- 13 -

90. As a licensed marketer of insurance services and products, Mr. Vanlandingham holds himself out to the public as possessing special knowledge, skill, and expertise in the production and administration of insurance contracts.

91. Mr. Vanlandingham owed a duty to Apache to exercise reasonable care, skill, and diligence in carrying out his duties in procuring insurance and the Policy.

92. To the extent the Policy does not provide coverage for Apache's loss from the fire, Mr. Vanlandingham breached this duty by, without limitation, failing to keep all aspects of the Property fully insured in an amount sufficient to replace it to the City of Mesa's current building codes.

93. Mr. Vanlandingham's breach directly and proximately caused Apache to suffer direct, consequential, and incidental damages in an amount to be proven at trial, but no less than $50,000.00.

WHEREFORE, Apache requests judgment against Mr. Vanlandingham as follows:

A. Awarding Apache compensatory, consequential, and incidental damages in an amount to be proven at trial, but no less than $50,000.00.

B. Awarding Apache is costs and attorneys' fees pursuant to A.R.S. §§ 12-341 and 12-341.01.

C. Awarding Apache interest on all sums awarded to it, said interest calculated at the highest legal rate from the date of judgment until paid in full; and

D. Granting Apache such other relief as the Court may deem appropriate under the circumstances.

**COUNT SIX**

**RESPONDEAT SUPERIOR LIABILITY – COUNTRY**

94. Apache hereby realleges each and every preceding allegation contained in this Complaint as if set forth in their entirety herein.

95. Upon information and belief, at all times material hereto, Mr. Vanlandingham was an agent of Country, employed exclusively to market and sell Country's insurance products.

96. Upon information and belief, at all times material hereto, all activities and omissions described herein to have been undertaken by Mr. Vanlandingham were performed within the scope, course, and actual authority of Mr. Vanlandingham's agency/employment for his principal/employer, Country.

97. Country, as principal and/or employer, is responsible for the acts and omissions of Mr. Vanlandingham taken within the scope and course of his employment.

WHEREFORE, Apache requests judgment against Country as follows:

A. Awarding Apache compensatory, consequential, and incidental damages in an amount to be proven at trial, but no less than $50,000.00.

B. Awarding Apache is costs and attorneys' fees pursuant to A.R.S. §§ 12-341 and 12-341.01.

C. Awarding Apache interest on all sums awarded to it, said interest calculated at the highest legal rate from the date of judgment until paid in full; and

D. Granting Apache such other relief as the Court may deem appropriate under the circumstances.

DATED this 17th day of February, 2021.

LANG & KLAIN, P.C.

By: */s/ James Hanson*
    James N. Hanson
    Jason A. Clark
    *Attorneys for Plaintiff*